Discretionary Authority to Interpret the Terms of Health Plans Pursuant to Planned Documents. I start there because that's really the most important fact in this case, because it means that Cigna's planned interpretation and its benefit determinations are entitled to a tremendous amount of deference under the law. As this Court made crystal clear in the McCorkle case, Cigna's benefit determinations can't be set aside merely because the Court disagrees with them. Instead, they can only be set aside if they were unreasonable, and respectfully, the District Court's decision below cannot possibly be squared with that deferential standard. With that in mind, I'm going to focus on two points during my time today. First, I want to talk about why Cigna did not abuse its discretion by interpreting its terms in the same manner as five federal judges previously found to be legally correct. Second, I want to talk about why Cigna had substantial evidence that Humble was not obligating its patients to pay the charges that it submitted to Cigna. Let's start with the planned interpretation issue. Cigna's plans incentivize patients to keep health care costs down by requiring them to deductibles and co-insurance. And the proportion of chair patients pay is higher when they go to an out-of-network provider like Humble rather than an in-network provider because the plans understandably want to incentivize patients to stay in-network where costs are cheaper. A few out-of-network providers try to destroy those incentives by waiving the portion of the charge that the patient is supposed to pay. Humble does this because as Judge Hughes recently found in the Aetna v. Humble case, no economically rational patient would choose Humble over an in-network provider. This practice of waiving or reducing a patient's proportion of the chair of charges is known as fee-forgiving. Because fee-forgiving wreaks havoc on the incentive structure set up in health plans and drives up health care costs for everyone, it's illegal under Texas Insurance Code 1204.055. And if the FBI catches you waiving co-insurance for someone covered under a Medicare plan, you go to jail for Medicare fraud. For decades, Cigna has tried to combat fee-forgiving. And for decades, it's interpreted its plans as excluding coverage when a health care provider doesn't obligate the patient to pay the charge. This is based on a provision in Cigna plans that excludes coverage for, quote, charges which you are not obligated to pay or for which you are not billed or for which you would not have been billed except that they were covered under the plan. That's a standard provision in Cigna plans. And the key question in this case is whether Cigna's interpretation of that provision was at least reasonable. And we think there's an easy answer to that question. Because at the time Cigna made the benefit determinations at issue here, that plan provision had again been interpreted by five federal judges. And all five judges, the district court judge in Kennedy, the three judges on the Seventh Circuit panel in Kennedy, and Judge Ellison in his original North Cyprus opinion, they all agreed with Cigna's plan interpretation. They all said not only was Cigna's interpretation reasonable, it was legally correct. And at the time that Cigna made the benefit determinations here, no judge had ever suggested otherwise. And so Judge Hoyt's decision below really is remarkable. He found Cigna abused its discretion by applying a plan interpretation that five other federal He did so without even mentioning, let alone grappling with, all the judges who came before him and looked at the same issue. Respectfully, that can't possibly be squared with the deferential abuse of discretion standard. That standard is meaningless if a district court judge can say an administrator acted unreasonably by applying the same interpretation that five federal judges previously agreed with. Now, avoiding that kind of absurd result is exactly why we have the deferential abuse of discretion standard in the first place. As Chief Justice Roberts explained in Concriet v. Fromer, courts are supposed to defer to the administrator's interpretation, quote, to avoid a patchwork of different interpretations of a plan that covers employees in different jurisdictions. But that's exactly what we have after the district court's decision below. A Cigna plan now means something different in Illinois, where Kennedy was decided, than it means in Texas. In Concriet, the Supreme Court also explained, courts are supposed to defer to the administrator's interpretation because an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from de novo review. Well, an unexpected and inaccurate plan interpretation is again exactly what we have after the district court decision below. Rather than deferring to Cigna's expertise in interpreting the plans, Judge Hoyt tried to do it himself, and respectfully, even Humboldt doesn't try to argue that Judge Hoyt did it correctly. Again, the provision at issue excludes coverage for charges you're not obligated to pay. That's what it says. Here's what Judge Hoyt says that means on page 18 of his opinion. Quote, the court's plain reading of the provision suggests that the exclusionary provision pointed to the obligation of the member slash patient to be certain that the services sought at the insurance provided does not necessarily guarantee coverage for all of the member slash patient's costs. Now I've read that over and over, and I have no idea what it means, and I have no idea how the district court got there based on the language of the provision at issue. His interpretation reads the provision right out of Cigna plans, and it also reads out the requirement that patients pay their coinsurance and deductibles, which apparently is unenforceable under the district court's interpretation of the plans. That's in clear contrast with the Seventh Circuit's straightforward, clear interpretation of the provision in Kennedy, which gives the provision meaning and which is entirely consistent with the plan's requirements that patients pay their coinsurance and deductibles. That was Cigna's interpretation, too, but what we have here is plain situation the court warned against in McCorkle, where the district court substituted its own interpretation of a plan for the reasonable interpretation of the administrator. So when they approach, or when they file a request for reimbursement, then what does Cigna require them to produce to show that, in fact, the patient paid the deductible and paid the proportionate share? Usually Your Honor, nothing. Usually this works on the honor system. Cigna trusts the... It didn't work too well, did it? Not in this case, Your Honor, but what you see is most of the out-of-network providers play by the rules. A small number of them don't, and when Cigna's Special Investigations Unit, which is required to have to root out fraud, finds out that a provider isn't obligating patients to pay it, and it's not just not obligating them to pay the coinsurance and deductibles, they're saying, come to us because we'll treat you as if we were an in-network provider. They're warring patients to the facility with the promise that they won't have to pay their coinsurance and deductibles. Well, it seems awfully trusting. I mean, there are a whole lot of other companies out there. I mean, we get a lot of Medicare fraud cases doing this exact thing. So your plan doesn't seem to really have much teeth in it. Well, what happens, Your Honor, is in this case, Humble got caught because people noticed a $168,000 charge for an outpatient sinus surgery that would have cost $10,000 or $12,000. Sinus what? Sinus surgery. A deviated septum surgery, Your Honor. And the evidence at trial was that that would have cost $10,000 or $12,000 a network. And so someone noticed that, and then two other charges also got noticed, and a planned sponsor called Samba, called up Cigna, and also complained and said, why are we seeing a $133,000 charge for an outpatient surgery? And again, this is not even the surgeon's charge. That's the charge for providing the operating room for an outpatient surgery. Egregious charges. And so that's why Humble started getting investigated. And they were caught, thankfully. Now Humble puts a lot of reliance on this court's decision in North Cyprus. To be sure, in that case, the panel said that there were strong arguments that Cigna's interpretation wasn't legally correct. That dicta from 2015 was not available to Cigna when it made the benefits determinations here. All of those were made years earlier, where the five federal judges had said Cigna got the interpretation right. Presumably, the court in North Cyprus was referring to the concern that maybe an ordinary plan member wouldn't understand the provision. As they point out in their brief, we think it's irrelevant. But Cigna has expanded the language going forward to make sure, make it crystal clear to ordinary plan members how this works. But that doesn't mean that the language wasn't clear before. And respectfully, I don't think any Cigna member would have a problem understanding that if they reached a secret deal with their provider to waive coinsurance and deductibles, that it might have some impact on the insurance coverage if Cigna found out about it. But even if you disagree with me on that, even if you disagree with the Seventh Circuit and you believe Cigna's interpretation of the plan was wrong because an average plan member wouldn't understand it, well, that's where Judge Hoyt stopped his analysis. But that's clear error. Because remember, Cigna has discretion to interpret the terms of the plans. And again, Cigna's interpretation can only be set aside only if the court finds it unreasonable, even if the court would disagree with it. This court expressed absolutely no opinion on the reasonableness of Cigna's plan interpretation in North Cyprus. And cases from other circuits made clear it couldn't possibly have been an abuse of discretion. The Third Circuit in the Hinkle case, for example, said that, quote, where the courts of appeals are in disagreement on an issue, a decision one way or another cannot be regarded as an abuse of discretion. And in Fitzgerald v. Colonial Life, a District of Maryland case, the court said, in my judgment, the fact that two courts have upheld interpretations similar to that of Colonial Life as dispositive of the issue, in light of the deferential standard of view that applies, indeed, arguably the fact that two courts have found Colonial Life's interpretation of the policy language reasonable itself establishes that the interpretation does not constitute an abuse of discretion. Again, here there wasn't even a split. Every judge to consider the issue agreed with Cigna's interpretation when the benefit determinations were made. So we think our interpretation was legally correct, but even if you disagree, it was at a minimum reasonable. What that means is that if Cigna's interpretation was at least reasonable, the benefit determinations here have to be upheld as long as they were supported by substantial evidence. Again, a great deal of deference is due to Cigna, and the test isn't exacting. As this court explained in Anderson v. Cytech, substantial evidence is more than a scintilla, but less than a predominance. And again, the test is not whether you agree with Cigna's factual determinations. This court, as the court put it in Anderson, need only assure that the administrator's decision falls somewhere on a continuum of reasonableness, even if at the low end. And Cigna easily satisfied that standard here. The conclusion that Humble wasn't obligating patients to pay their co-insurance came after a lengthy investigation that produced three types of evidence. Cigna received 154 responses from patients, all saying Humble wasn't collecting co-insurance. Cigna asked Humble for ledgers showing how much they collected from patients. Humble's response is in the record at ROA 10349, and it shows that Humble collected $3,600 on more than $419,000 of charges to Cigna, which is less than 1%. And to put that into perspective, the plans at issue here generally require 20-50% co-insurance. They were collecting less than 1%. Are you going to get to the attorney's fees issue? Yeah, attorney's fees, absolutely. If you overturn the judgment on the ERISA claim, the attorney's fees claim goes away. We thought the attorney's fees were not supported by evidence in the record, so they were reasonable. There's also this issue of the penalties under ERISA that Judge Hoyt awarded. Ten circuits have already held that only the administrator, the named administrator in the plan, can be held liable under that ERISA provision. There's absolutely no basis for this de facto administrator theory that Judge Hoyt adopted. Mr. Simon, you've asked that we reverse and render, and that we remand for a judgment against Humble for the damages you seek, and I know the judge entered a judgment after you rested. So, what proceeding would remain in district court? Right. So, Your Honor, what we would ask for, again, is reversal of the judgment against Cigna, rendering, take nothing for Humble, and then we have counterclaims that we believe need to be tried. Everything's complicated by the fact that after Judge Hughes caught on to what Humble was doing, he ordered them to repay $41 million to Aetna for doing to Aetna what they did to Cigna, and so Humble's in bankruptcy now. And so, we would have to sort out the procedure there, where our counterclaims got tried, whether it's in the bankruptcy court or . . . I'm sorry, I'm a little confused on the procedure. You filed the action. Yes. I assume you sought the damages in your action. Yes, Your Honor. What are these counterclaims that you feel like need to be tried? Sorry, I misspoke, Your Honor. They were not counterclaims. They were Cigna's claims. Judge Hoyt dismissed Cigna's claims. And then you put on proof of that in your case, in G, before he rendered judgment for Humble?    And then you put on proof of that in your case, in G, before he rendered judgment for Judge Hoyt. We had requested a jury trial, so our state law claims should have been tried to a jury. They were not. Instead, Judge Hoyt, after a bench trial on the ERISA claims, dismissed all of Cigna's state law claims. So, those state law claims technically have not really been tried. But you put on proof for your state law claims? That's correct, Your Honor. Okay. Your time has expired. Thank you. You have five minutes on rebuttal. Okay. Yes. Good morning. May it please the Court, I'm John LaHod for Applee Humble Surgical Hospital. After a nine-day bench trial, the district court correctly found that Cigna's interpretation was not legally correct, that Cigna abused his discretion, that Cigna acted in bad faith, and that Humble was not a fee forgiver, and that Humble obtained valid assignments. I'm going to address those points today. But at the end of the day, the issue is the court's finding that Humble was not a fee forgiver. What proof was put on at trial to justify this $168,000 claim for providing the outpatient facility? The proof that justifies the numbers is evidence of negotiations between Humble and Cigna or You heard counsel refer to the $133,000 Samba claim. That claim, it was argued, was grossly excessive and high. That claim was settled by the parties for $93,000. I'm asking what proof was put on to justify a $168,000 claim for Cigna surgery on an outpatient basis? The proof of the charges was Humble's charge master. Humble's charge master is in the 85th percentile, which means 15% of geographically similar facilities charge more and then 85% charge less. And the district court credited that testimony that Humble's charges, the $168,000 or what have you, were within the scope of that percentile, within reason compared to other hospitals in the region. Now as part of this lawsuit, excuse me, in finding that Humble was not a fee forgiver, the district court cited evidence of Humble collecting from patients before and after their procedures. As part of this lawsuit, Cigna itself calculated Humble's collections at 16%. It did not rebut or challenge evidence that hospitals generally only collect 10 to 20% of patient responsibility. Cigna indicted Humble as a fee forgiver as pretext to deny Humble's claims to either drive it out of business or as one district court recently held, to force the provider into an in-network relationship. Most telling is that Cigna denied claims for fee forgiving when there was no obligation for the patient to pay. For example, patient VR at treatment time had met his deductible, an out-of-pocket maximum. Under the terms of his plan, he should have been covered at 100%. Cigna denied the claim for fee forgiving. Patient MC also met his maximums and was also covered at 100% with a lifetime max of $3 million. Humble collected nothing and Cigna denied the claim as fee forgiving. Same for patient MB. Once it flagged Humble for fee forgiving in December 2011, Cigna presupposed fee forgiving and either denied claims outright or, when presented with evidence of some payment, applied an extra-contractual, proportionate payment scheme that contradicted the plan's language and was specifically designed to short pay Humble. Now, in the North Cyprus case, the court framed a legal correctness inquiry applicable to this exact plan language as, quote, whether a plan member would understand the language to condition coverage on the collection of coinsurance. That was the question the district court held that a plan participant would not understand that language, that his or her coverage is expressly conditioned on whether Humble collects up front. As this court made clear in North Cyprus, the most important inquiry is whether Cigna's interpretation is consistent with a fair reading of the plans. There is nothing in this language about conditions. There is nothing in this language about waiver. There is nothing in here about fulfilling 100% of patient responsibility before coverage kicks in. The average plan participants who testified at trial did not understand that they have no coverage if they do not pay 100% of their coinsurance. Cigna did not elicit any contrary testimony from these plan members, some of whom were called by Cigna. Cigna's own employees don't understand that language. They conceded that fee forgiving is not in the plans and that they routinely had to explain it to patients and to each other. Cigna had to add 185 words to this section of the plans to make it understandable at all. Now, to be clear, none of the claims in this case include that additional language. In North Cyprus, this court added that how Cigna addresses this provision in an in-network setting is also relevant. The district court rightly found at page 82 that in-network providers were not provided, were not required, excuse me, to show proof of patient payment before Cigna paid the claims. This shows non-uniform construction of the plan and that fee forgiving is just a means of denying out-of-network claims. Now, there's Cigna's heavy reliance on that 1991 Seventh Circuit Kennedy case is improper and does not rescue its plan interpretation or show that Cigna didn't abuse its discretion. The Seventh Circuit in Kennedy itself, and in later cases, limited that decision in a way that prevents any insurer or administrator from reasonably relying on it. In Kennedy, the court engaged in a significant policy discussion, did not undertake a fair reading analysis, and focused exclusively on the provider's written contract with his patients to waive responsibility. The Seventh Circuit expressly declined to address the question of, quote, what happens if a provider bills his patients for the 20% but never follows up? Nine years later, in the Trustmark case from 2000, the Seventh Circuit distinguished Kennedy and held that the insurer remained liable even though the hospital waived the patient's share before treatment. Because the patient remained financially responsible for any charges, the insurance company was liable. The Seventh Circuit in Trustmark said, quote, unlike the medical care provider in Kennedy who perpetrated an ongoing scheme of fraud by waiving the copayment but raising the fee, the hospital's agreement held Mrs. Fujiya ultimately responsible for any outstanding balance not covered by the insurance. Other courts have recognized that factual distinction. We cite the American Federation case in our brief. There's also the OSF Healthcare System case, which is a 2008 Central District of Illinois case, Seventh Circuit, 2000 Westlaw 5170638. You can only get to Cigna's argument if you overextend Kennedy to address a factual situation that Kennedy expressly did not answer, ignore the Seventh Circuit's Trustmark case, ignore North Cyprus, and ignore the most important part of the legal correctness inquiry. In the Wildberg case, this court said, quote, a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interests of the fiduciary at the expense of the affected beneficiaries. And in the Space Sec versus Maritime Association case, this court said, quote, the fact that the plan administrators have adopted one reasonable interpretation of the plan does not foreclose our proceeding to the second step of our review. In this case, Cigna's interpretation was not only legally wrong, it was unreasonable and an abuse of discretion. Now, you heard some reference to authority, that if there's a split, then it's per se reasonable. Two things. First, there is no split here. Second, an interpretation might still be inconsistent with the plan and an abuse of discretion, as we heard in the Wildberg and Space Sec cases. Cigna's cited authority actually undermines its argument. In the Third Circuit Hinkle case that we just heard about, the Third Circuit, in a quote cited by counsel, was actually quoting the district court. And then right after that quote, right after it, the Third Circuit says, although this might not always be true. And then went on to find that at least in that case, the insurance company's interpretation was not unreasonable. It was a fact-specific determination. You heard reference to the Fitzgerald case out of Maryland, and the long quote there. After that quote, about a paragraph later, the district court says that he cannot rely on the prior court's decisions, upholding a similar interpretation of the plans, and said, quote, were I to do so, I believe I would be shirking my responsibility to independently review the reasonableness of colonial life's interpretation. An insurance company abuses its discretion when it acts capriciously and arbitrarily and behaves in direct conflict with the plan. There is no such thing as unfettered discretion with an administrator. The district court found that, quote, Cigna abused its discretion by obstinately denying Umbel's claims for benefits in spite of the medical services provided, and the manner in which it handled Umbel's claims was simply disingenuous and arbitrary and focused more on accomplishing a predetermined purpose, denying Umbel's claims. Cigna's main witness at trial, the manager of the team that investigated Umbel, testified that fee-forgiving is not in the plans. The plans don't require full payment of the coinsurance or out-of-pocket maximum before the insurance pays. The plans don't require full payment of coinsurance before the claim is even processed, and she testified that the patients can pay their share any time, including after the claim is processed. She added that coinsurance usually is paid after the insurance payment is made, and these are the record sites that we point to at page 13 and 14 of our brief. So according to Cigna's own witnesses, what Cigna implemented is not in the plans, and then once Cigna flagged Umbel as a fee-forgiver, it further abused its discretion. After it determined that Umbel was a fee-forgiver, this was in December 2011, Cigna would intercept the Umbel claim and send out a survey to determine how much the patient paid. If the survey was not returned, claim denied. The claim was denied regardless of whether the patient had met deductibles or out-of-pocket maximums. Even if the patient had paid Umbel, Cigna denied the claim if it didn't get a copy of a check or a credit card receipt. Well, when you made your claims for reimbursement, did you make any attempt to prove to Cigna that you were not in fact a fee-forgiver, that you had received payment from your clients, patients, whatever they are? When we were told that claims had been forgiven or had been denied for fee-forgiving— No, Your Honor. In the ordinary course of claims filing, there was no additional proof that was provided to show that patients had paid or that we had collected. After a claim had been submitted, if we were told—we weren't often told that claims were being denied for fee-forgiving—if we were told, we would try to make some showing, as we did in our letter from September 2011, that patients had paid or that patients were being billed. That's important. In response to claims, Cigna demanded proof of payment, not just proof of an obligation to pay. During litigation and trial, Cigna agreed that it's not fee-forgiving if the provider attempts to collect. So not only is Cigna's behavior inconsistent with the plan language, Cigna's behavior is inconsistent with its own view of what fee-forgiving is. And Cigna says it paid the claims when it received proof of payment. No, it didn't. It never went back to the plan language after December 2011. By that point, Cigna was not performing a claim-by-claim determination. It had made a global decision regarding all of Umpell's claims. When it received evidence of payment, Cigna would pay according to this proportionate payment scheme, not according to the plans. I provided the court with a handout that shows how this works using real-world data. And it's a pretty dense document, I admit, but the highlights are, number one, the patient paid her deductible or had met her deductible. She had paid $717 worth of her out-of-pocket max, and Umpell collected over $2,200 before the procedure. Is this information in your brief? Yes. This is in the record also at 99495-96. The chart? I'm sorry? The chart? No, Your Honor, the chart is not in my brief. After the procedure, Umpell and Cigna agreed that an acceptable allowable amount would be $93,000. This is the Samba claim that we heard about earlier. And under the planned terms, the patient and Cigna would split the cost $3,070 up to the out-of-pocket max. The bottom line is that under the terms of the plan, the remaining patient responsibility was about $2,000. Cigna's share would have been $91,000. Under Cigna's extra-contractual proportionate payment scheme, Cigna viewed the $2,200 prepay as the entirety of the patient's responsibility and reverse calculated a significantly reduced share of about $5,200. Cigna ignored the actual payment up front, threw out the negotiated allowable, and calculated a new allowable, which was significantly less than it would have paid. This application across all schemes, as opposed to a claim-by-claim analysis, belies Cigna's invocation of health care costs and policy reasons. If Cigna was serious about health care costs, it would have examined each claim as it came in, looked at met deductibles, looked at satisfied out-of-pocket obligations, and pay according to the plans. What they did here is not in the plans. If an administrator interprets a plan in a manner that contradicts the plan language, the administrator has abused its discretion. It's undisputed that this proportionate payment scheme is not in the plans. This was deposition testimony at 6601 in the record. Accordingly, and the reason why Cigna adopted this scheme was to squeeze Umbl and drive it out of business. And that's an abuse of discretion, and that's why the district court found that the plan language does not support denying Umbl's claims based on waiver due to Umbl's alleged fee-forgiving policy or in Cigna's novel view, pursuant to its proportionate share analysis. Cigna's arbitrary and capricious behavior is rooted in bad faith. Judge Hoyt even called it extraordinary bad faith. In November 2010, Cigna's director of the SIU, the Special Investigations Unit, sent an email to his colleagues seeking creative means to deny high-dollar claims, including one from Umbl where there was no fraud. In other words, Cigna's executives were seeking a way to deny legitimate yet high-dollar claims. And because fee-forgiving is just a means of denying claims, Umbl's indictment was preordained. The other instances of bad faith, misrepresenting the existence of coverage, misrepresenting preauthorization, misstating payments owed and paid, misrepresenting the reasons for why Umbl has been to deny claims. And when denials are predetermined, you will have an abuse of discretion. The District Court's finding that Umbl did not engage in fee-forgiving is not clearly erroneous. There's no fee-forgiving if the provider tries to collect. And the District Court highlighted evidence of Umbl's pre-procedure collection practices, post-procedure billing practices, and found that Umbl attempted to collect fees. Umbl's bills are in the record at 106269-107549. Copies of checks and credit card receipts are in the record at 103643-103879. Additional evidence of payment in Umbl's notes at 100822-25, 100937-939, 110489-493, and, of course, the evidence in the handout regarding patient J.O. Now, Cigna's benefits determination was made in December 2011. Cigna admits in its reply brief at page 25 that the proper focus is on the information Cigna did have when it implemented the fee-forgiving protocol in December 2011. At that time, Umbl did not have hundreds of surveys. It had Umbl's responsive letter from September 2011 and the results of 10 surveys. In that letter from Umbl, Umbl told Cigna that it sent additional bills to five patients and then two patients set up payment plans. One member was covered at 100% pursuant to negotiations, and Umbl had no notes for two of the patients. As to the 10 surveys, in most of them, Cigna did not ask anything about money. It asked that the patient was given an estimate of what the patient was told. Six of the 10 letters did not answer that question or provide any information about money. Two of the patients said they paid. One paid $1,500, one paid $375, and two of the patients said nothing. Some of the surveys were set before even Cigna processed the claim, and the district court credited evidence that the ability to determine the balance due could not be done until the claim was processed. Based on the evidence before it, the court found that Cigna's sweeping response was not based on substantial evidence. That is not clear error. Cigna complains that the district court went outside the administrative record and failed to admit the record. Judge Hoyt admitted the surveys and case notes for file completion. He heard several days' worth of testimony from Cigna witnesses about this alleged investigation and the contents of the file. Judge Hoyt acknowledged that evidence, surveys, and what Cigna says it did, but more critically, Judge Hoyt did not need to go to that post-December 2011 evidence because Cigna did not use any of that in making a claims determination. Cigna denied claims because it presupposed a fee for giving on all of Humboldt's claims, refused to credit evidence of payment. I am out of time unless the court has any further questions. Thank you, Mr. LaHod. Thank you. Mr. Simon, you have five minutes for rebuttal. Pardon? Three. I'm sorry. I meant corrected. Three minutes. Three minutes. That's right. So this chart wasn't in the brief, but it was provided to me before the argument, and I was able to do some research right before the argument on what's not on here. Again, what's not on here is that the charge was $133,000 for an outpatient operating room for deviated septum surgery. That's in the record at 3398 of the record on appeal. The other thing that's interesting is that this document proves that Humboldt wasn't obligating patients to pay what they should have, right? This patient had a 30% co-insurance requirement. 30% of the allowed charge, which was $93,000, is something like $30,000. Now, that's capped by the patient's out-of-pocket max, which was $5,000. They had already used $700 of that, it looks like. So they should have collected at least $4,300 in co-insurance. Plus, if they were actually obligating the patient to pay this $133,000 charge, they would have had to balance bill the patient for the full difference between the $133,000 charge and the $93,000 allowable. So in other words, this patient, if they were actually following the terms of the plan that they're suing under, under ERISA, they would have had to collect $44,000 from this patient. They collected $2,232. This patient never should have been at Humboldt. This patient went to an in-network doctor, in-network surgeon, who happened to be an This patient wanted to be in-network. They were sent to Humboldt. As a result, SIGNA ended up paying, or not SIGNA, the employer who funds the plan, ended up paying Humboldt $93,000 for a surgery that should have been done for $10,000 to $12,000 in-network. Now, you heard from Mr. Wahad, they collect 16% on average. That's 16% of what they were supposed to collect, not 16% of their total charges. Their formula, what they're supposed to do is to collect 20 to 50% of 100% of their actual charges. Instead, they were collecting 5% of 60% of their estimated charges, a tiny fraction. And all of this was a deliberate scheme to get as much money out of the employers who while not having the patients run out the door when they found out the charges and that this was an added network provider. That's what was going on here. I heard some efforts to distinguish Kennedy. I see I'm out of time. Thank you, Mr. Simon. The court will take these cases under advisement, and this panel will recess until 9 o'clock tomorrow morning. Thank you. Thank you.  Yes, ma'am. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you.